**In re FORD MOTOR COMPANY IGNITION SWITCH PRODUCTS LIABILITY LITIGATION.**

**MDL No. 1112.**
**No. CIV.A. 96–3125(JBS).**

United States District Court,
D. New Jersey.

March 1, 1999.

Richard S. Schiffrin, Schiffrin & Craig, LTD, Bala Cynwyd, PA, Timothy G. Blood, Milberg, Weiss, Bershad, Hynes and Lerach, LLP, San Diego, CA, for MDL Plaintiffs.

Beverly C. Moore, Moore & Brown, Washington, DC, for Snodgrass.

Brian C. Anderson, O'Melveny & Meyers, Washington, DC, for Ford Motor Company.

Scott L. Winkelman, Crowell & Moring, Washington, DC, for United Technologies Automotive, Inc.

Matthew T. Heartney, Arnold & Porter, Los Angeles, CA, for State Farm Mutual Automobile Insurance Company.

Maria T. Mee, Preston, Steffen, Katzen, Gallagher & MacMorris, Oakland, CA, for California State Automobile Association Inter–Insurance Bureau.

## OPINION

SIMANDLE, District Judge.

This matter is before the court on the motion of MDL plaintiffs James Atkins, Victoria Saxe and Jaquellyn C. Pope for leave to file an Amended Class Action Complaint, and on the motion of Atkins and Saxe for remand due to an alleged absence of Article III standing. Because Atkins and Saxe have not attempted to cure the pleading deficiencies that led the court to grant in part defendants' motion to dismiss the Consolidated First Amended Class Action Complaint on September 30, 1997, the court denies the motion for leave to amend with respect to them and denies their motion for remand, which is predicated entirely on the court's acceptance of the proposed Amended Class Action Complaint. However, because Pope has partially cured the pleading deficiencies that led the court to dismiss the Consolidated First Amended Class Action Complaint, the court grants in part and denies in part the motion for leave to amend with respect to her.

## BACKGROUND

### A. The Origins of this Multidistrict Litigation

This litigation involves one group of insurance subrogation cases [1] and two groups of putative consumer class action suits, in all of which the plaintiffs allege that defendant United Technologies Automotive, Inc. ("UTA") manufactured defective motor vehicle ignition switches that have a propensity to spontaneously catch fire, and that defendant Ford Motor Company ("Ford") manufactured and distributed automobiles, light trucks and utility vehicles of various models from 1985 to 1992 containing those defective ignition switches.

The instant motions do not involve the first group of putative class action plaintiffs in this litigation, namely, owners of Ford vehicles who seek to represent a nationwide class of people whose Ford vehicles have caught fire as a result of the allegedly defective ignition switch. The court refers to these plaintiffs as the "*Snodgrass* plaintiffs" because Teri Snodgrass is presently the lead plaintiff of this group, which is comprised of a consolidation of two separate actions originally filed in this court.[2]

The instant motions were filed by some, but not all, of the second group of putative class action plaintiffs in this litigation, which is comprised primarily of owners of Ford vehicles who seek to represent a class of people whose Ford vehicles contain the allegedly defective ignition switch

---

1. The instant motions do not involve the insurance subrogation cases, which were brought by insurance companies that seek to recover the costs of compensating insureds who owned Fords that allegedly caught fire as a result of the allegedly defective ignition switch. These plaintiffs, State Farm Insurance Company and California State Automobile Inter–Insurance, originally filed their cases in federal court in California, from which they were transferred to this court in 1998 by the Judicial Panel on Multidistrict Litigation (the "MDL Panel") pursuant to 28 U.S.C. § 1407.

2. *Snodgrass v. Ford Motor Co.* (f/k/a *Wilks v. Ford Motor Co.*), Civil Action No. 96–1814(JBS), and *Arts Transportation v. Ford Motor Co.* (f/k/a *Andrews v. Ford Motor Co.*), Civil Action No. 96–3198(JBS).

but have not caught fire.[3] One of these plaintiffs, Yvette Veideman, commenced her case in state court in New Jersey, from which it was removed to this court by the defendants. The MDL Panel subsequently transferred to this court all Ford/ UTA consumer ignition switch cases that had been filed in or removed to federal courts around the country, including those of Atkins and Saxe.[4] As a group, the court refers to these plaintiffs as the "MDL plaintiffs."

### B. The Consolidated First Amended Class Action Complaint

On July 19, 1996, MDL plaintiffs Veideman, Atkins, Saxe and Billy Davis filed a Consolidated Amended Class Action Complaint in this court alleging the following causes of action: (1) violation of state consumer fraud statutes; (2) strict products liability; (3) breach of contract and express warranty; (4) fraudulent concealment; and (5) breach of implied warranty of merchantability. Thereafter, on November 21, 1996, Veideman, Atkins, Saxe, Davis and 115 other named individuals (including Pope) filed a Consolidated First Amended Class Action Complaint, in which they asserted a claim under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq., in addition to the claims described above. The court refers to the 119 plaintiffs named in the Consolidated First Amended Class Action Complaint as the "Veideman plaintiffs."[5] The instant motions were filed by three of the Veideman plaintiffs—Atkins, Saxe and Pope.

### C. The Motion for Class Certification

The Veideman plaintiffs sought certification of a proposed class comprised of two subclasses. The first subclass ("Subclass A") was composed of "all Class members who currently own or lease Ford Vehicles that were not included in the safety recall in the United States announced by Ford on April 25, 1996." (Consolidated First

3. There are a small number of MDL plaintiffs who allege that their vehicles have caught fire due to an allegedly defective ignition switch.

4. The consumer cases transferred to this court from other districts by the MDL panel include the following: *James Atkins v. Ford Motor Co.,* Civil Action No. 3:96–455 (S.D.Cal.), Civil Action No. 96–3474(JBS)(D.N.J.); *Victoria Saxe v. Ford Motor Co.,* Civil Action No. 3:96–536 (N.D.Cal.), Civil Action No. 96–3224(JBS)(D.N.J.); *James Moon v. Ford Motor Co.,* Civil Action No. 1:96–192 (S.D.Ala.), Civil Action No. 96–3742(JBS)(D.N.J.); *Kent Kennedy v. Ford Motor Co.,* Civil Action No. 96–1172 (N.D.Ill.), Civil Action No. 96–3902(JBS)(D.N.J.); *Gerald McConnell v. Ford Motor Co.,* Civil Action No. 1:96–1024 (S.D.N.Y.), Civil Action No. 96–3175(JBS)(D.N.J.); *Wayne Pierce v. Ford Motor Co.,* Civil Action No. 2:96–936 (M.D.Ala.), Civil Action No. 96–4912(JBS)(D.N.J.); *Robert Cade v. Ford Motor Co.,* Civil Action No. 2:96–1541 (E.D.La.), Civil Action No. 96–4407(JBS)(D.N.J.); *Billy Davis v. Ford Motor Co.,* Civil Action No. 2:96–192 (S.D.Miss.), Civil Action No. 96–4172(JBS)(D.N.J.); *Teddy Obermeister v. Ford Motor Co.,* Civil Action No. 1:96–2742 (E.D.N.Y.), Civil Action No. 96–4450(JBS)(D.N.J.); *Abelardo Alvarado v. Ford Motor Co.,* Civil Action No. 1:96–55 (N.D.Tex.), Civil Action No. 97–1905(JBS)(D.N.J.); *Booker Cook v. Ford Motor Co.,* Civil Action No. 96–2041 (N.D.Ala.), Civil Action No. 96–5861(JBS)(D.N.J.); and *Wayne Rick v. Ford Motor Co.,* Civil Action No. 3:98–511 (S.D.Ill.), Civil Action No. 98–3138(JBS)(D.N.J.). One of these cases, *Pierce,* was remanded to the MDL Panel with instructions to remand to the U.S. District Court for the Northern District of Alabama by Order dated August 27, 1998. The MDL Panel remanded the case to the Northern District of Alabama by Order dated October 8, 1998.

5. For the sake of consistency and ease of reference, the court continues to refer to this group of 119 MDL plaintiffs as the Veideman plaintiffs even though, as discussed below, Veideman's claims were dismissed with prejudice on September 30, 1997. All 119 Veideman plaintiffs are identified in Appendix A to this Opinion, along with their alleged states of residence, the model and year of the Ford vehicle or vehicles they allegedly purchased or leased, the state in which and approximate date on which they purchased or leased their Ford vehicle or vehicles, and the Subclass or Subclasses to which each belongs.

Amended Class Action Complaint at ¶ 136.) [6] The second subclass ("Subclass B") was composed of "all Class members who currently own or lease Ford Vehicles that were included in the safety recall in the United States announced by Ford on April 25, 1996." (*Id.* at ¶ 137.) [7]

The Veideman plaintiffs moved for class certification under Federal Rule of Civil Procedure 23. In an Opinion and Order filed on August 28, 1997, the court denied the Veideman plaintiffs' motion for class certification. *See In re Ford Motor Co. Ignition Switch Products Liability Litigation*, 174 F.R.D. 332 (D.N.J.1997). The court denied the motion for class certification under Rule 23(b)(2) because the Veideman plaintiffs were "unable to satisfy either the common question prong or the superiority prong of the rule." *Id.* at 341.

The court identified the "principal reason for denying class certification" as "plaintiffs' failure to demonstrate a suitable and realistic plan for trial of the class claims which arise under the differing laws of fifty states." *Id.* at 342. The court also noted that certification of a nationwide class would require the court "to establish countless subclasses taking into account not only differences in state law but also in model years, thereby rendering this case unmanageable for disposition in a federal forum in a single case." *Id.* The court also denied the Veideman plaintiffs' motion for class certification under Rule 23(b)(1)(A), finding that there was "nothing in the record that indicates that prosecution of separate actions in this case would create a significant risk of inconsistent adjudications or establish inconsistent standards." *Id.* at 354.

6. The "Subclass A" plaintiffs were owners of vehicles of the following models and years that are alleged to contain the defective ignition switch but that were not included in the April 25, 1996 safety recall: Aerostar (1986–87); Bronco/Continental/ Cougar/Crown Victoria/Escort/EXP/F–Series Light Trucks/Grand Marquis/Lincoln/Lynx/Mustang/Tempo/Thunderbird/Topaz (1984–87); Bronco II (1984–90); Capri/LTD/Marquis (1984–86); E–Series (1984–93); Explorer (1991–93); Mark (1984–89); and Ranger (1984–early 1993). Of the 119 plaintiffs named in the Consolidated First Amended Complaint, the following 68 owned one of these vehicles, making them members of Subclass A: J. Pope ('84 Mustang only), J. Atkins, V. Saxe, S. Mariani, L. Paige, L. Perrone, F. Riles, L. Arms, Y. Orticke, J. Murray, R. Sutton, L. and M. Smith, R. Stokes, H. Stampley, D. Shaw, C. and T. Edler, C. Farlough, G. Miller, Sr., A. Massa, T. Lacayo, J. Raphael, J. Smith, Jr., G. Simon, E. Tripp, J. Talamo, M. Thibodeaux, G. Theodore, G. Smith, J. Seymore, C. LeBlanc, J. Hargrove, J. Hill, G. Larche, W. McNabb, F. Morris, G. Gleason, M. McKay, J. Aldor, Jr., D. Pazos, R. Edgar, A. Mitchell, M. Joseph, Sr., S. Smith, S. Halloran, III, J. Imbraguglio, S. and J. Harris, D. Gaubert, H. Hirschey, H. Fischer, E. Coffman, I.F. and A. Hill, D. Jeanpierre, C. Johnson, F. Jobert, Jr., W. and T. Mack, A. J. LeBlanc, J. Lane, A.J. Livaccari, III, M. Kilbert, R. Thibodeaux, Jr., D. Williams, S. and N. Washington, S.D. Washington, J. Searls, C.J. Smith, Jr. ('86 Tempo only), T. Roose, M. Weigand, O. Verneuil, Jr., S. Watts, C. Wallace, S. Williams, C. Pagliughi, G. Songy, D. Vallaire, D. Rousell, and A. Husband.

7. The "Subclass B" plaintiffs were owners of vehicles included in the 1996 safety recall of approximately 8 million vehicles that Ford offered to inspect and replace the ignition switch. The following models and years were included in the April 25, 1996 recall: Escort (1988–90); EXP (1988); Mustang (1988–early 1993); Tempo/Topaz (1988–early 1993); Thunderbird/Cougar (1988–early 1993); Crown Victoria/Grand Marquis (1988–89); Lincoln Town Car (1988–89); Aerostar (1988–91); and Bronco/F–Series Light Trucks (1988–91). Of the 119 plaintiffs named in the Consolidated First Amended Class Action Complaint, the following 43 owned recalled vehicles, making them members of Subclass B: J. Pope ('90 Thunderbird only), Y. Veideman, J. Ellis, D. Graci, J. Mariani, F. Severin, D. Lamont, R. Landry, J. Morris, V. Riley, M. Robertson, Sr., A. Sweeney, K. Singleton, J. Meier, Sr., A. and A. Keesing, R. and D. Romero, C. Klein, A. Arceneaux, S. Hatton, J. Barthelmy, S. Garnett, M., Sr. and P. Jones, M. and E. Jackson, D. Johnson, E. Golsby, R. Lephand, W. Kelley, III, A. Johnson, Bunch, Charles T. Smith, Charles J. Smith Jr. ('89 Tempo only), J. Milioto, Sr., C. Wyatt, A. Turner, Jr., P. Taylor, N. Allen, P. Akers, M. Harris, E. Hall, Jr., G. Hecard, K. Robinson, D. McCoy, and J. Millet. As discussed below, the claims of these plaintiffs as to these vehicles were dismissed with prejudice on September 30, 1997.

D. *The Motion to Dismiss*

At about the same time the Veideman plaintiffs moved for class certification, Ford and UTA moved to dismiss the Consolidated First Amended Class Action Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In an Opinion and Order filed September 30, 1997, the court granted in part and denied in part defendants' motion to dismiss the Consolidated First Amended Class Action Complaint. Specifically, the court dismissed the claims of the Subclass B plaintiffs (owners of Ford vehicles that had been recalled) with prejudice because they did not assert any actual existing injury.[8] (*See* September 30, 1997 Opinion at 18–21.) With respect to the Subclass A plaintiffs (owners of Ford vehicles that had not been recalled),[9] the court ruled as follows:

1. The court dismissed all of the Magnuson–Moss Act claims asserted in the First Count without prejudice as to Ford and with prejudice as to UTA. (*See id.* at 64–68.)

2. The court dismissed all of the fraud claims asserted in the Second Count without prejudice as to both Ford and UTA for failure to plead fraud with particularity in accordance with Federal Rule of Civil Procedure 9(b). (*See id.* at 53–54.)

3. The court dismissed all of the state law consumer fraud claims asserted in the Third Count without prejudice as to both Ford and UTA for failure to adequately plead detrimental reliance and damages. (*See id.* at 22–29.) The court also dismissed the claims brought by the California Subclass A plaintiffs (Atkins, Saxe and Pope) under Section 17200 of the California Business Code with prejudice, to the extent they sought to recover damages, because that section does not permit private litigants to seek damages for violations of the statute, and dismissed their claims under Section 1770 of the California Civil Code without prejudice for failure to plead that their vehicles were purchased for personal use. (*See id.* at 32–34).

4. The court dismissed all of the breach of contract and express warranty claims asserted against UTA in the Fourth Count with prejudice. (*See id.* at 36–38, 40.) The court denied Ford's motion to dismiss the breach of contract claims and Ford's motion to dismiss the breach of express warranty claims to the extent they were based on the written warranty that accompanies each Ford vehicle, but dismissed the breach of express warranty claims against Ford without prejudice to the extent they were based on promotional or advertising materials. (*See id.* at 36–38, 39, 40–42.) However, the court also dismissed all of the breach of express warranty claims of the New York (Marilyn Cordano), Mississippi (Davis) and California (Atkins, Saxe and Pope) Subclass A plaintiffs for failure to allege notice in accordance with Uniform Commercial Code § 2–607(3)(a), as enacted in each of those three states. (*See id.* at 42–43.) The court denied Ford's motion to dismiss the redhibition claims asserted by the Louisiana Subclass A plaintiffs. (*See id.* at 43–46.)

5. The court dismissed the strict products liability claims asserted by the New York (Cordano), Mississippi (Davis) and California (Atkins, Saxe and Pope) Subclass A plaintiffs in the Fifth Count with prejudice as to both Ford and UTA under the economic loss doctrine. (*See id.* at 46–51.) However, the court denied defendants' motion to dismiss the strict products liability claims of the Louisiana Subclass A plaintiffs under La. Rev. St. Ann. § 2800.54. (*See id.* at 51–52.)

6. The court dismissed all of the breach of implied warranty of merchantability claims asserted in the Sixth Count with prejudice as to both Ford and UTA except the redhibition claims of the Louisi-

---

8. The Subclass B plaintiffs are identified in n. 7, *supra.*

9. The Subclass A plaintiffs are identified in n. 6, *supra.*

ana Subclass A plaintiffs against Ford. (*See id.* at 60–64.)

In sum, the only claims that Atkins, Saxe and Pope asserted in the Consolidated First Amended Class Action Complaint that survived defendants' motion to dismiss completely unscathed were the claims for injunctive relief and/or restitution under Sections 17200 and 17500 of the California Business & Professions Code they asserted against Ford and UTA in the Third Count the breach of contract claims they asserted against Ford in the Fourth Count. The Section 17200 consumer fraud claims for damages they asserted in the Third Count, the strict products liability claims they asserted in the Fifth Count, and the breach of implied warranty of merchantability claims they asserted in the Sixth Count were dismissed with prejudice, as were the breach of contract and express warranty claims they asserted against UTA in the Fourth Count. The Magnuson–Moss Act claims they asserted in the First Count, the fraud claims they asserted in the Second Count, the Section 1770 consumer fraud claim they asserted in the Third Count, and the breach of express warranty claims they asserted against Ford in the Fourth Count were dismissed without prejudice.

### E. The Window of Opportunity to Cure Pleading Defects

In the September 30, 1997 Opinion, the court invited the Veideman plaintiffs to attempt to cure the pleadings deficiencies of those claims that were dismissed without prejudice by filing a Consolidated Second Amended Class Action Complaint. (*See id.* at 68–69.) The court provided, however, that all claims that were dismissed without prejudice would be deemed dismissed with prejudice if the Consolidat-

ed Second Amended Class Action Complaint was not filed within thirty days of September 30, 1997 "or such other time as approved by the court." (*See id.*) The court also incorporated that directive into its September 30, 1997 Order.

### F. The Subject Matter Jurisdiction Motion

The Veideman plaintiffs did not file a Consolidated Second Amended Class Action Complaint within thirty days of September 30, 1997. Instead, the Veideman plaintiffs filed a motion for a judgment of lack subject matter jurisdiction and for vacatur of the court's August 28, 1997 ruling denying their motion for class certification and the court's September 30, 1997 ruling granting in part and denying in part defendants' motion to dismiss.[10]

In an Opinion and Order filed on August 27, 1998, the court denied the Veideman plaintiffs' motion, finding that it had always had federal subject matter jurisdiction over the case and that it continued to do so. The court noted that it had diversity jurisdiction under 28 U.S.C. § 1332 over the cases that were transferred to this court from other district courts at the time of the transfers, and that it also had federal question jurisdiction under 28 U.S.C. § 1331 after the Veideman plaintiffs asserted their Magnuson–Moss Act claims in the Consolidated First Amended Class Action Complaint. (*See* August 27, 1998 Opinion at 12.) The court also noted that it had always had supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367(a), and that it continued to have supplemental jurisdiction to decide defendants' motions to dismiss those claims after it dismissed the Veideman plaintiffs' Magnuson–Moss Act claims on September 30, 1997. (*See id.* at 13.)

**10.** The motion was originally filed on November 21, 1997, but was dismissed without prejudice following a case management conference at which the parties agreed to dismiss and defer the motion practice in order to proceed with common discovery. Although the January 28, 1998 Consent Order dismissing the motion provided that the Veideman plaintiffs would probably reinstate the motion at the end of common discovery, the Veideman plaintiffs renewed the motion on May 7, 1998, shortly after common discovery had begun.

The court specifically considered whether it should decline to exercise supplemental jurisdiction over the Veideman plaintiffs' state law claims after dismissing the Magnuson–Moss Act claim over which it had original jurisdiction, *see* 28 U.S.C. § 1367(c)(3), exercising its discretion in favor of maintaining supplemental jurisdiction; the court also found that its continued exercise of supplemental jurisdiction under § 1367 over the remaining state law claims would further the goals of multidistrict litigation under § 1407. (*See id.* at 14–19.)

### G. *The Reopening of the Window to Cure Pleading Deficiencies*

In the course of ruling on the motion for a judgment of lack of subject matter jurisdiction, the court noted that the Veideman plaintiffs were permanently foreclosed from amending their Magnuson–Moss Act clams due to their failure to file a Consolidated Second Amended Class Action Complaint or seek additional time to do so within thirty days of September 30, 1997, resulting in the conversion of the dismissal without prejudice into a dismissal with prejudice in accordance with the terms of the September 30, 1997 Opinion and Order. (*See id.* at 18 n. 16.) In response to that observation, the Veideman plaintiffs then moved for modification of the court's August 27, 1998 Opinion and Order. The Veideman plaintiffs maintained that their decision not to file a Consolidated Second Amended Class Action Complaint within thirty days of September 30, 1997 did not result in the dismissal with prejudice of those claims the court had dismissed without prejudice in its September 30, 1997 Opinion and Order and did not foreclose them from amending and reasserting those claims.

During the November 2, 1998 oral argument on the Veideman plaintiffs' motion for modification of the August 27, 1998 Opinion and Order, the court made clear that the Veideman plaintiffs' interpretation of the court's September 30, 1997 Opinion and Order did not comport with the court's own understanding of that ruling:

.... The MDL plaintiffs have pointed to what they perceive of as an ambiguity in the record that needs clarification, and that they have asserted, and I think in good faith, that MDL counsel were under a different apprehension of whether or not this court had subject matter jurisdiction following September 30th of 1997.

Now, I can state that **my intention on September 30th, 1997 was that by a date within 30 days of that date, we would either have an amended pleading or we would have dismissals with prejudice of the claims that were unamended.** And as you track through the September 30th, 1997 order, some of the dismissals were with prejudice because they were pure matters of law, rather than pleading form. Others were dismissals without prejudice because there could be, for instance, more specific factual allegations of fraud alleged than had been present in the consolidated amended complaint.

It's the subsequent conduct of this litigation and subsequent conduct of the parties that raises the doubt. I don't believe that my September 30th, 1997 opinion raises doubt, and I don't think that my August 1998 opinion should be the cause for doubt. There was supplemental jurisdiction to determine the State law claims. They were determined. There was a period to amend.

(Transcript of the November 2, 1998 telephone conference oral argument ("Tr.") at 21:4—22:1.)

Nevertheless, the court decided on November 2, 1998 to give the Veideman plaintiffs an opportunity to cure the defects that led the court to grant in part defendants' motion to dismiss on September 30, 1997:

All right, let's do this then. The motion that I'm granting leave to file is a motion that would extend the period for an additional 30 days in which to seek

leave to file [an] amended complaint, and [the MDL plaintiffs] would have to attach to that motion the proposed amended pleading. And **if the proposed amended pleading passes muster under the law of the case and under Rule 15, then the motion will be granted, and if it doesn't, then the motion will be denied.**

(Tr. at 30:21—31:3.)

Accordingly, in an Order filed on November 4, 1998, the court enlarged the thirty day period within which the Veideman plaintiffs were permitted to file an amended complaint pursuant to the court's September 30, 1997 Opinion and Order so as to permit the Veideman plaintiffs to file a motion for leave to file an amended complaint on or before December 2, 1998. That motion for leave to file an amended complaint, and a related motion to remand for lack of standing, are now before the court.

### DISCUSSION

#### I. *The Motion for Leave to Amend*

##### A. *The Proposed Amended Class Action Complaint in the Atkins and Saxe Actions*

Against this background, we examine the proposed Amended Class Action Complaint, submitted on December 2, 1998 (Ex. A to Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Leave to File and Amended Class Action Complaint and Jury Demand in the *Atkins* and *Saxe* Actions). The proposed Amended Class Action Complaint presents the claims of only three of the Veideman plaintiffs: Pope, Saxe and Atkins.[11] Each

plaintiff resides in California, and all of the claims asserted in the proposed Amended Class Action Complaint arise under California law.

The proposed Amended Class Action Complaint contains a narrower class definition than the one set forth in the Consolidated First Amended Class Action Complaint in that a number of models and/or years have been eliminated from the proposed class. (*Compare* proposed Amended Class Action Complaint at ¶ 5 with Consolidated First Amended Class Action Complaint at ¶ 5.) Among the models and years eliminated from the class definition of the proposed Amended Class Action Complaint are the vehicles that formed the basis of the claims Atkins and Saxe asserted in the Consolidated First Amended Class Action Complaint. (*Compare* proposed Amended Class Action Complaint at ¶ 5 with Consolidated First Amended Class Action Complaint at ¶¶ 13–14.) Thus, Atkins and Saxe no longer assert ownership of an affected Ford vehicle but seek to bring claims on behalf of the general public under California Business & Professions Code §§ 17200 (Second Cause of Action) and 17500 (Third Cause of Action). Pope, who purchased a 1984 Mustang in California in October 1984 and a 1990 Thunderbird in California in June 1990 (*see* proposed Amended Class Action Complaint at ¶ 14),[12] also asserts claims on behalf of the general public under California Business & Professions Code §§ 17200 (Second Cause of Action) and 17500 (Third Cause of Action), as well as claims individually and on behalf of a class of vehicle owners under the California Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (First Cause of Action),

---

**11.** As a consequence of their failure to join in the motion for leave to file an Amended Class Action Complaint, all of the claims of the other Subclass A Veideman plaintiffs that were dismissed without prejudice on September 30, 1997 are now dismissed with prejudice, in accordance with the terms of the September 30, 1997 Opinion and Order.

**12.** As noted in the proposed Amended Class Action Complaint at ¶ 14 and n. 1, all of Pope's claims in the proposed Amended Class Action Complaint are based on her ownership of the 1984 Mustang because the court dismissed Pope's claims arising out of her ownership of the 1990 Thunderbird, along with the claims of all of the other Subclass B plaintiffs, with prejudice on September 30, 1997.

and under common law theories of wrongful concealment of dangerous condition (Fourth Cause of Action) and breach of contract and express warranty (Fifth Cause of Action).

All three plaintiffs allege that the proposed Amended Class Action Complaint contains "no claims arising under federal law or that confer jurisdiction on the federal courts of the United States" and that "[t]he amount in controversy of each individual claim does not exceed $50,000, exclusive of interest and costs, for any individual named plaintiff or class member." (Proposed Amended Class Action Complaint at ¶¶ 1–2.) Furthermore, Atkins and Saxe allege that they "do not have standing under Art. III of the Constitution because they are [only] asserting causes of action under California Business & Professions Code §§ 17200 and 17500, et seq. as unaffected plaintiffs." (*Id.* at ¶ 3.)

### B. Standard on Motion for Leave to Amend

■ Federal Rule of Civil Procedure 15(a) provides that party may amend his pleading once before a responsive pleading is served, or thereafter upon leave of court or on consent from his adversary. *See* Fed.R.Civ.P. 15(a). The rule further provides that "leave should be freely given when justice so requires." *Id.* The decision whether to grant leave to amend rests with the sound discretion of the trial judge and will be overturned on appeal only upon a finding of abuse of discretion. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654 (3d Cir.1998) (citing *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir.1984)).

The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chemical Co.*, 921 F.2d 484, 486–87 (3d Cir.1990). However, the granting of leave to amend is not automatic. *See Dover Steel Co., Inc. v. Hartford Accident and Indemnity Co.*, 151

F.R.D. 570, 574 (E.D.Pa.1993). Leave may be denied upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir.1981), *cert. denied sub nom.*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).

### 1. Futility of Amendment

■ One of the grounds upon which a district court may deny leave to amend is "futility of amendment." *Foman*, 371 U.S. at 182, 83 S.Ct. 227. " 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir.1997) (citations omitted); *see also Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J.1990)(" 'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue").

■ In making this assessment, the district court should apply the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6). *In re Burlington Coat Factory*, 114 F.3d at 1434; *Miller v. Beneficial Management Corp.*, 844 F.Supp. 990, 1001 (D.N.J.1993). Thus, "[t]he trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Miller*, 844 F.Supp. at 1001; *Harrison Beverage*, 133 F.R.D. at 468. "This does not require the parties to engage in the equivalent of substantive motion practice upon the proposed new claim or de-

fense; this does require, however, that the newly asserted [claim or] defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit." *Harrison Beverage,* 133 F.R.D. at 469.

## C. *Analysis*

The instant motion for leave to amend is not, as MDL plaintiffs' counsel suggested during the oral argument on this motion on January 14, 1999, a "garden variety" motion for leave to amend under Rule 15(a). In announcing its decision on November 2, 1998 to grant the Veideman plaintiffs an additional thirty days in which to seek leave to amend, the court explicitly articulated the standard that would govern its ruling on this motion: "And if the proposed amended pleading passes muster under the law of the case and Rule 15, then it will be granted, and if it doesn't, then the motion will be denied." (Tr. at 30:25—31:3.) Thus, in addition to meeting the requirements of Rule 15, the proposed amended pleading must comply with the "law of the case" by curing the pleading deficiencies of those claims the court dismissed without prejudice on September 30, 1997.

The MDL plaintiffs' counsel pledged to do just that during the November 2, 1998 oral argument that preceded the court's decision to permit the Veideman plaintiffs to file the instant motion for leave to amend. Explaining that the Veideman plaintiffs "just want an opportunity to amend the complaint to fix the claims that were dismissed with prejudice" on September 30, 1997, counsel represented that the amended pleading the Veideman plaintiffs intended to file would "address the concerns raised by the Court" in that ruling. (Tr. at 11:10–11; 22:18–19.) Notwithstanding this proffer, the proposed Amended Class Action Complaint largely fails to address the concerns the court expressed in its September 30, 1997 Opinion and Order. Indeed, Atkins and Saxe have made absolutely no attempt to cure the pleading deficiencies identified by the

court in that ruling, and Pope has been only partially successful in her attempt to do so.

### 1. *The Jurisdictional and Standing Allegations*

Before examining the substantive allegations of the proposed Amended Class Action Complaint, the court must address the effect of the jurisdictional allegations of that pleading, in which Atkins, Saxe and Pope allege that "[t]here are no claims arising under federal law or that confer jurisdiction on the federal courts of the United States" and that "[t]he amount in controversy of each individual claim does not exceed $50,000, exclusive of interest and costs, for any individual named plaintiff or class member." (Proposed Amended Class Action Complaint at ¶¶ 1–2.) The court also must address the implications of the allegation by Atkins and Saxe in the proposed Amended Class Action Complaint that they "do not have standing under Art. III of the Constitution because they are asserting causes of action under California Business & Professions Code §§ 17200 and 17500, *et seq.* as unaffected plaintiffs." (*Id.* at ¶ 3.)

Federal Rule of Civil Procedure 8(a)(1) requires a complaint to contain "a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it." The jurisdictional allegations of the proposed Amended Class Action Complaint are anything but a "short and plain statement of the grounds upon which the court's jurisdiction depends." On the contrary, the jurisdictional allegations of the proposed Amended Class Action Complaint are a short and plain denial of the existence of federal question and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332. The question, then, is whether plaintiffs' failure to plead the existence of federal subject matter jurisdiction renders the proposed Amended Class Action Complaint fatally

defective under Rule 8(a)(1). The court thinks not.

As noted above, the court has already determined that it has and should continue to exercise supplemental jurisdiction under § 1367 over the state law claims asserted in this litigation. Thus, "the court already has jurisdiction [over the claims asserted in the proposed Amended Class Action Complaint] and [those claims] need[ ] no new grounds of jurisdiction to support [them]." Fed.R.Civ.P. 8(a)(1); *see also* 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1207 (2d ed. 1990) ("A jurisdictional basis for claims falling within the [supplemental] jurisdiction of the court probably need not be pleaded inasmuch as the court already has jurisdiction over the case within the meaning of Rule 8(a)(1)," although "the better practice is to include the allegation in the complaint" even if the rule "may not absolutely require supplemental jurisdiction to be pleaded expressly"). Accordingly, plaintiffs' failure to expressly plead the existence of supplemental jurisdiction under § 1367 is not fatal to their motion for leave to amend.

■ The same cannot be said, however, about the assertion by Atkins and Saxe that they have no standing to bring the claims they assert in the proposed Amended Class Action Complaint in this federal court because they have narrowed the proposed class definition to exclude the vehicles upon which the claims they asserted in the Consolidated First Amended Class Action Complaint were based. This allegation renders the proposed Amended Class Action Complaint futile with respect to Atkins and Saxe because it could not withstand a motion to dismiss.[13] Because Atkins and Saxe have not attempted to cure the pleading deficiencies that led the court to dismiss without prejudice some of the claims they asserted in the Consolidated First Amended Class Action Complaint, the court denies the motion for leave to amend with respect to Atkins and Saxe, and their claims that were dismissed without prejudice on September 30, 1997 will be dismissed with prejudice, in accordance with the terms of the September 30, 1997 Opinion and Order.[14]

2. *Proposed Amendments by Pope*

Unlike Atkins and Saxe, Pope has tried in the proposed Amended Class Action Complaint to cure the pleading deficiencies that led the court to dismiss without prejudice some of the claims she asserted in the Consolidated First Amended Class Action Complaint on September 30, 1997, and she has been partially successful.

■ The court dismissed the wrongful concealment of dangerous condition claim Pope asserted in the Second Count of the First Amended Consolidated Class Action Complaint and the statutory consumer fraud claims she asserted under California Civil Code §§ 1770(a)(7) and 1780(a) in the Third Count of the First Amended Consolidated Class Action Complaint without prejudice as to both Ford and UTA for failure to plead fraud with the requisite particularity under Federal Rule of Civil Procedure 9(b) because the complaint failed to describe with any particularity how the plaintiffs relied upon the alleged misrepresentations and omissions of the defendants, or how such reliance resulted

**13.** As discussed in Section II, *infra,* however, this newly proposed allegation does not affect the validity of the court's September 30, 1997 ruling with regard to Atkins and Saxe because Atkins and Saxe certainly had standing to bring, and were actively prosecuting, the claims they asserted in the Consolidated First Amended Class Action Complaint at that time.

**14.** It is not clear to the court whether Atkins and Saxe wish to continue to pursue their remaining claims (*i.e.,* for injunctive relief and/or restitution under Section 17200 and 17500 of the California Business & Professions Code against Ford and UTA and for breach of contract against Ford) in this court, or whether they intend to abandon these claims. The court asks counsel to consider this question and to be prepared to address it at the next case management conference.

in damages. (*See* September 30, 1997 Opinion at 22–29, 53–54.) Yet the proposed Amended Class Action Complaint offers no more detail about how Pope relied upon Ford's alleged misrepresentations and omissions or how such reliance resulted in damages than did the First Amended Consolidated Class Action Complaint. *Compare* Consolidated First Amended Class Action Complaint at ¶¶ 182, 184, 196–97, 200–01, 211–12 with proposed Amended Class Action Complaint at ¶¶ 78–79, 128, 130–31. Thus, Pope has failed in her attempt to rehabilitate her claims under California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (First Cause of Action), and the common law theory of wrongful concealment of dangerous condition (Fourth Cause of Action). Accordingly, the court denies Pope's motion for leave to amend her claims under the Consumers Legal Remedies Act and the common law theory of wrongful concealment of dangerous condition and dismisses those claims with prejudice, in accordance with the terms of the September 30, 1997 Opinion and Order.

■ The court also dismissed Pope's statutory consumer fraud claim under Section 17200 of the California Business & Professions Code with prejudice to the extent she sought to recover damages under that statute. (*See* September 30, 1997 Opinion at 32–33.) Pope has now asserted new claims under Section 17200 (Second Cause of Action) and Section 17500 (Third Cause of Action) of the California Business and Professions Code. To the extent Pope seeks to recover damages under these provisions, her claims are foreclosed by the court's September 30, 1997 dismissal of her 17200 claim with prejudice. However, to the extent she seeks injunctive relief and restitution, Pope may proceed with these claims. A plaintiff need not plead reliance and damages with particularity to state a claim upon which relief can be granted under Sections 17200 and 17500. *See, e.g., Martin v. Dahlberg,* 156 F.R.D.

207, 218 (N.D.Cal.1994). Accordingly, the court grants Pope's motion for leave to amend with respect to her statutory consumer fraud claims under Sections 17200 and 17500 to the extent she seeks injunctive relief and/or restitution.

Finally, the court dismissed the breach of express warranty claim Pope asserted against Ford in the Fourth Count of the First Amended Consolidated Class Action Complaint without prejudice to the extent the claim was based on promotional or advertising materials, finding that "the assertions of the complaint on this point are so vague and general that Ford is not able to defend itself adequately against such claims without additional detail concerning the alleged specific warranties made." (September 30, 1997 Opinion at 40–41). The court directed that "[a]t the very least, plaintiffs must aver the specific terms of the warranty that was allegedly breached." *Id.* at 41. The court also dismissed Pope's express warranty claim for failure to give notice of the breach to Ford "within a reasonable time after he discovers or should have discovered" the alleged breach, as required by California Commercial Code § 2607(3)(a). (*See* September 30, 1997 Opinion at 43.) Pope has cured both of these defects in the proposed Amended Class Action Complaint. Pope has more specifically identified the specific terms of the warranties Ford allegedly breached. *Compare* First Amended Consolidated Class Action Complaint at ¶¶ 177–79, 181 with proposed Amended Class Action Complaint at ¶¶ 75–77. And, although she is not specific about when, Pope now claims to have given notice to Ford as required by the statute. (*See* proposed Amended Class Action Complaint at ¶ 102). Accordingly, the court grants Pope's motion for leave to amend with respect to her express warranty claim.

In summary, the court denies the motion for leave to amend on the grounds of futility of amendment with respect to Atkins and Saxe because they have not at-

tempted to cure the pleading deficiencies of those claims the court dismissed without prejudice on September 30, 1997. With respect to Pope, the court denies the motion for leave to amend in part and grants the motion in part. The court denies Pope's motion for leave to amend her claims under California's Consumers Legal Remedies Act and the common law theory of wrongful concealment of dangerous condition on the grounds of futility of amendment because she has not pleaded the reliance or damages elements of the alleged fraud with any more specificity than that which the court found lacking in the Consolidated First Amended Class Action Complaint. However, the court grants Pope's motion for leave to amend her statutory consumer fraud claims under Sections 17200 and 17500 of the California Business & Professions Act (to the extent she seeks injunctive relief and/or restitution) and her breach of express warranty claims, finding that she has adequately cured the pleading deficiencies that led the court to dismiss those claims without prejudice on September 30, 1997.

## II. *The Motion to Remand for Lack of Standing*

Atkins and Saxe have also moved for remand of their actions based on their allegation that they "do not have standing under Art. III of the Constitution." (Proposed Amended Class Action Complaint at ¶ 3.) This tactic, however, is an impermissible attempt to avoid the effect of this court's September 30, 1997 Opinion and Order.

The motion for remand is entirely predicated on the revised class definition of the proposed Amended Class Action Complaint, from which Atkins and Saxe have carved out vehicles on which the claims they asserted in the Consolidated First Amended Class Action Complaint were based. Because the court has denied their motion for leave to amend, however, as to Atkins and Saxe the proposed Amended Class Action Complaint is merely an exhibit to a failed motion. With regard to the

claims of Atkins and Saxe, the operative pleading in this case remains the First Amended Consolidated Class Action Complaint, to the extent it survived the court's September 30, 1997 Opinion and Order granting in part and denying in part defendants' motion to dismiss. Thus, in examining the standing of Atkins and Saxe, the court must look to that pleading, not the proposed Amended Class Action Complaint.

■ In order to have standing, a plaintiff must: (1) have suffered an "injury in fact," i.e., an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; that was (2) caused by or fairly attributable to the challenged action of the defendant; and that is (3) likely redressable by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Atkins and Saxe pleaded these elements of standing in the First Amended Consolidated Class Action Complaint. Each claimed to have purchased or leased a vehicle that was included in the class definition set forth at ¶ 5 of the First Amended Consolidated Class Action Complaint. (*See* First Amended Consolidated Class Action Complaint at ¶¶ 13–14.) More specifically, each claimed to have purchased or leased a vehicle that was not included in the safety recall announced by Ford on April 25, 1996 ("Subclass A"). (*See id.* at ¶ 137.) Each joined in the allegations that their Ford vehicles contained a dangerously defective ignition switch that could cause a fire. (*See id.* at ¶¶ 6–7.) Each joined in the allegation that they had suffered damages that were attributable to Ford and UTA. (*See id.* at ¶¶ 147, 182.) Each joined in the general Prayer for Relief. (*See id.* at pg. 57–58.)

Atkins and Saxe continued to have standing when the court ruled on defendants' motion to dismiss on September 30, 1997. Consequently, Atkins and Saxe cannot escape the effect of that ruling. The only claims Atkins and Saxe asserted in

the First Amended Consolidated Amended Complaint that survived defendants' motion to dismiss completely unscathed were the claims for injunctive relief and/or restitution under Section 17200 and 17500 of the California Business & Professions Code they asserted against Ford and UTA in the Third Count and the breach of contract claims they asserted against Ford in the Fourth Count.[15]

As discussed above, Atkins and Saxe had an opportunity to cure the pleading deficiencies of the claims the court dismissed without prejudice on September 30, 1997, but they have now failed to successfully move for leave to amend those claims. As a result, their claims that were dismissed without prejudice on September 30, 1997 will be dismissed with prejudice.

Accordingly, the court denies Atkins and Saxe's motion for remand due to lack of standing, and dismisses with prejudice those claims asserted by Atkins and Saxe in the First Amended Consolidated Class Action Complaint that were dismissed without prejudice on September 30, 1997, leaving Atkins and Saxe with nothing but breach of contract claims against Ford. Atkins and Saxe continue to have standing, under the operative class definition of the Consolidated First Amended Class Action Complaint, to continue to pursue their Section 17200 and 17500 claims for injunctive relief and/or restitution against Ford and UTA and their breach of contract claims against Ford in this court if they choose to do so.

### III. *The Status of the Remaining Claims of the Other Subclass A Veideman Plaintiffs*

As noted above, as a consequence of their failure to join in the motion for leave to amend filed by Atkins, Saxe and Pope, all of the claims of the other Subclass A Veideman plaintiffs that were dismissed without prejudice on September 30, 1997 are now dismissed with prejudice, in accordance with the terms of the September 30, 1997 Opinion and Order. Those plaintiffs are left with only those claims they asserted in the Consolidated First Amended Class Action Complaint that survived defendants' motion to dismiss completely unscathed.

By the court's reckoning, Marilyn Cordano, the lone New York plaintiff who joined in the Consolidated First Amended Class Action Complaint, is left with nothing but the breach of contract claim she asserted against Ford in the Fourth Count of that pleading. Likewise, Davis, the lone Mississippi plaintiff who joined in the Consolidated First Amended Class Action Complaint, also is left with nothing but the breach of contract claim he asserted against Ford in the Fourth Count of that pleading. The Louisiana Subclass A plaintiffs, who are numerous, are left with the breach of contract and redhibition claims they asserted against Ford in the Fourth Count, the strict products liability claims they asserted against Ford and UTA under La.Rev.Stat. Ann. § 2800.54 in the Fifth Count, and the redhibition claims they asserted against Ford in the Sixth Count of that pleading.

It is not clear to the court whether these remaining Veideman plaintiffs wish to continue to pursue these remaining claims, or whether their decision not to join in the motion for leave to amend represents a decision on their part to abandon this liti-

---

**15.** As noted above, the court dismissed the Section 17200 consumer fraud claims Atkins and Saxe asserted in the Third Count, the strict products liability claims they asserted in the Fifth Count, and the breach of implied warranty of merchantability claims they asserted in the Sixth Count with prejudice as to both Ford and UTA, and dismissed the breach of contract and express warranty claims they asserted against UTA in the Fourth Count with prejudice. The court dismissed the Magnuson–Moss Act claims they asserted in the First Count, the fraud claims they asserted in the Second Count, the Section 1770 consumer fraud claim they asserted in the Third Count, and the breach of express warranty claims they asserted against Ford in the Fourth Count without prejudice.

gation entirely. The court asks counsel to consider this question and to be prepared to address it at the next case management conference.

### CONCLUSION

For the foregoing reasons, the court denies the motion for leave to amend with respect to Atkins and Saxe, denies in part and grants in part the motion for leave to amend with respect to Pope, and denies Atkins and Saxe's motion for remand due to lack of standing. The accompanying Order is entered.

### ORDER

THIS MATTER having come before the court on the motion of MDL plaintiffs James Atkins, Victoria Saxe and Jaquellyn C. Pope for leave to file an Amended Class Action Complaint, and on the motion of Atkins and Saxe for remand due to an alleged absence of Article III standing, and the court having considered the moving papers and the opposition thereto and having heard the argument of counsel, and for the reasons expressed in the accompanying Opinion;

IT IS on this day of March, 1999, hereby ORDERED as follows:

1. The motion for leave to amend is DENIED with respect to Atkins and Saxe, and the claims they asserted in the Consolidated First Amended Class Action Complaint that were dismissed without prejudice on September 30, 1997 are hereby DISMISSED WITH PREJUDICE, in accordance with the court's September 30, 1997 Opinion and Order.

2. The motion for leave to amend is DENIED IN PART and GRANTED IN PART with respect to Pope. The court denies Pope's motion for leave to amend the claims she asserted in the Consolidated First Amended Class Action Complaint under California's Consumers Legal Remedies Act and the common law theory of wrongful concealment of dangerous condition, and those claims, which were dismissed without prejudice on September 30, 1997, are hereby DISMISSED WITH PREJUDICE, in accordance with the terms of the court's September 30, 1997 Opinion and Order. The court grants Pope's motion for leave to amend her statutory consumer fraud claims under Sections 17200 and 17500 of the California Business & Professions Act and her common law breach of express warranty claim. Pope shall file an Amended Class Action Complaint that comports with the terms of this Order within fourteen (14) days of the date of this Order.

3. Any claim asserted by any Subclass A Veideman plaintiff other than Atkins, Saxe and Pope that was dismissed without prejudice on September 30, 1997 is hereby DISMISSED WITH PREJUDICE, in accordance with the terms of the September 30, 1997 Opinion and Order, due to the failure of the remaining Subclass A Veideman plaintiffs to cure the pleading deficiencies that led the court to dismiss those claims without prejudice.

4. The motion of Atkins and Saxe for remand due to lack of standing is DENIED.

Appendix to March 1, 1999 Opinion and Order

| VEIDEMAN PLAINTIFFS | | | | |
|---|---|---|---|---|
| NAME | STATE OF RESIDENCE | MODEL/YEAR | STATE/DATE OF PURCHASE | SUB-CLASS |
| Yvette Veideman | NJ | '90 Aerostar | NJ 12/90 | B |
| Jaquelynn C. Pope | CA | '84 Mustang<br>'90 Thunderbird | CA 10/84<br>CA 06/90 | A<br>B |
| James Atkins | CA | '92 Explorer | CA 02/93 | A |

| NAME | STATE OF RESIDENCE | MODEL/YEAR | STATE/DATE OF PURCHASE | SUB-CLASS |
|---|---|---|---|---|
| | | '91 Econoline 350 | CA 05/91 | A |
| Victoria Saxe | CA | '93 Explorer | CA 03/93 | A |
| Marilyn Cordano | NY | '87 Thunderbird | NY 05/87 | A |
| Billy Davis | MS | '85 LTD | MS 1987 | A |
| Sandra Mariani | LA | '93 Explorer XLT | LA 05/93 | A |
| Louvenia Paige | LA | '87 Aerostar | LA 03/96 | A |
| Luigi Perrone | LA | '86 Thunderbird | LA 10/95 | A |
| Francis Riles | LA | '85 Topaz | LA 03/95 | A |
| Julia Ellis | LA | '88 Aerostar E150 | LA 12/92 | B |
| Leslie Arms | LA | '85 LTD Crown Vic | LA 12/94 | A |
| Pietra Graci | LA | '89 Grand Marquis | LA 02/89 | B |
| Yvonne Orticke | LA | '85 Topaz | LA 08/84 | A |
| Joseph Murray | LA | '87 Aerostar | LA 10/91 | A |
| Jean Mariani | LA | '89 Topaz | LA 01/90 | B |
| Furnell Severin | LA | '88 Town Car | LA 07/98 | B |
| Randy Sutton | LA | '86 Grand Marquis | LA 10/93 | A |
| Lee and Myrtle Smith | LA | '89 Ranger | LA 07/93 | A |
| Raymond Stokes | LA | '87 Tempo | CA 03/87 | A |
| | | '89 E–150 | CA 06/89 | A |
| Henry Stampley | LA | '87 Aerostar | LA 1991 | A |
| David Shaw | LA | '84 F 150 | LA 11/83 | A |
| Dennis Lamont | LA | '91 Cougar | VA 07/91 | B |
| Roxanne Landry | LA | '90 Escort | LA 08/93 | B |
| John Morris | LA | '88 Aerostar | LA 12/87 | B |
| Ched and Tina Edler | LA | '92 Explorer | LA 01/96 | A |
| Charles Farlough | LA | '89 Ranger | LA 10/89 | A |
| George Miller, Sr. | LA | '87 Town Car | LA 09/92 | A |
| Abelardo Massa | LA | '86 Escort | LA 12/95 | A |
| Thelma Lacayo | LA | '87 Crown Vic | LA 03/96 | A |
| Veronica Riley | LA | '88 Thunderbird | LA 04/88 | B |
| Marty Robertson, Sr. | ·LA | '88 Grand Marquis | LA 02/93 | B |
| Janna Raphael | LA | '85 Escort | LA 07/95 | A |
| Allyson Sweeney | LA | '92 Mustang | LA 10/92 | B |
| John Smith, Jr. | LA | '87 Aerostar | LA 04/96 | A |
| Gary Simon | LA | '85 LTD | LA 08/93 | A |
| Esther Tripp | LA | '84 Crown Vic | LA 01/94 | A |
| Joseph Talamo | LA | '85 Crown Vic | LA 05/85 | A |
| Marilyn Thibodeaux | LA | '84 Crown Vic | LA 02/95 | A |
| Gaynell Theodore | LA | '85 Mercury | LA 06/90 | A |
| Gerald Smith | LA | '86 Ranger | LA 07/93 | A |
| Joelle Seymore | LA | '85 Escort | LA 11/94 | A |
| Kenneth Singleton | LA | '91 Cougar | LA 08/93 | B |
| Cleveland LeBlanc | LA | '86 Town Car | LA 07/92 | A |
| Joseph Hargrove | LA | '84 LTD | LA 04/84 | A |

| NAME | STATE OF RESIDENCE | MODEL/YEAR | STATE/DATE OF PURCHASE | SUB-CLASS |
|---|---|---|---|---|
| Jean Hill | LA | '92 Explorer XLT | LA 04/92 | A |
| Gloria Larche | LA | '85 Town Car | LA 09/85 | A |
| Walter McNabb | LA | '85 Grand Marquis | LA 02/85 | A |
| Francisican Morris | LA | '85 Town Car | LA 12/92 | A |
| James Meier, Sr. | LA | '89 F 150 | LA 03/89 | B |
| Arthur and Alvine Keesing | LA | '89 Aerostar | LA 12/88 | B |
| Gray Gleason | LA | '87 Escort | LA 01/87 | A |
| Melvin McKay | LA | '86 Tempo | LA 06/89 | A |
| Joseph Aldor, Jr | LA | '87 Cougar XRL | LA 05/87 | A |
| Delores Pazos | LA | '85 Cougar | LA 07/93 | A |
| Robert Edgar | LA | '86 Cougar | LA 09/86 | A |
| Raymond and Debora Romero | LA | '91 Tempo | LA 03/91 | B |
| Arthur Mitchell | LA | '84 F 150 | LA 05/96 | A |
| Christopher Klein | LA | '88 Bronco | LA 07/95 | B |
| Alphonse Arceneaux | LA | '92 Cougar LS | LA 05/95 | B |
| Matthew Joseph, Sr. | LA | '87 Tempo | LA 07/90 | A |
| Shree Hatton | LA | '92 Tempo | LA 10/95 | B |
| Joseph Barthelemy | LA | '88 EST Escort | LA 01/95 | B |
| Sherrye Smith | LA | '87 Escort GL | LA 08/87 | A |
| Sherlane Garnett | LA | '89 Escort | LA 02/91 | B |
| Samuel Halloran, III | LA | '84 LTD | LA 03/90 | A |
| Jed Imbraguglio | LA | '86 Ranger | LA 06/95 | A |
| Sterling and Josie Harris | LA | '86 Tempo | LA 03/88 | A |
| Darlene Gaubert | LA | '92 Ranger | LA 08/95 | A |
| Herman Hirschey | LA | '86 F 150 XLT | LA 01/95 | A |
| Herbert Fischer | LA | '84 Grand Marquis | MD 06/84 | A |
| Estelle Coffman | LA | '87 Grand Marquis | LA 10/86 | A |
| Isabelle F. and Arthur Hill | LA | '87 LTD | LA 01/87 | A |
| Daisy Jeanpierre | LA | '86 Bronco | LA 11/95 | A |
| Cleveland Johnson | LA | '84 Town Car | LA 03/95 | A |
| Markell, Sr. and Patricia Jones | LA | '93 Tempo | LA 07/94 | B |
| Marion and Emile Jackson | LA | '90 Tempo | LA 08/90 | B |
| Damon Johnson | LA | '93 Cougar | LA 03/95 | B |
| Francis Jobert, Jr. | LA | '87 Bronco II | LA 02/93 | A |
| Edna Golsby | LA | '91 Tempo GL | LA 11/91 | B |
| Wanda and Troy Mack | LA | '87 Cougar | LA 01/95 | A |
| Alan J. LeBlanc | LA | '93 Explorer | LA 01/93 | A |
| Jake Lane | LA | '86 Grand Marquis | LA 12/85 | A |
| Anthony J. Livaccari, III | LA | '84 Escort | LA 03/86 | A |
| Ruby Ann Lephand | LA | '89 Town Car | LA 12/95 | B |
| Warren Kelley, III | LA | '89 Escort | LA 11/94 | B |
| Marian Kilbert | LA | '86 Town Car | LA 04/86 | A |
| Annie Johnson | LA | '89 Aerostar | LA 06/94 | B |
| Richard Thibodeaux, Jr. | LA | '84 F 150 | LA 10/90 | A |

| NAME | STATE OF RESIDENCE | MODEL/YEAR | STATE/DATE OF PURCHASE | SUB-CLASS |
|---|---|---|---|---|
| Danny Williams | LA | '88 E 150 | LA 04/95 | A |
| Solomon and Nancy Washington | LA | '85 F 150 | LA 02/87 | A |
| Shirley D. Washington | LA | '87 Escort | LA 12/87 | A |
| Robert and Bunch Resources c/o Debbie Manalae ("Bunch") | LA | '91 Thunderbird | LA 11/91 | B |
| Jerry Searls | LA | '87 Mercury | LA 04/96 | A |
| Charles T. Smith | LA | '89 Bronco | LA 02/96 | B |
| Charles J. Smith, Jr. | LA | '86 Tempo | LA 1986 | A |
| | | '89 Tempo | LA 1992 | B |
| Ted Roose | LA | '87 Mustang | LA 02/87 | A |
| John Milioto, Sr. | LA | '88 Aerostar | LA 04/89 | B |
| Cynthia Wyatt | LA | '90 Escort | LA 12/91 | B |
| Margaret Weigand | LA | '84 Grand Marquis | LA 10/85 | A |
| Ovide Verneuil, Jr. | LA | '91 Ranger XL | LA 03/93 | A |
| Sharon Watts | LA | '84 LTD | LA 02/95 | A |
| Cheryl Wallace | LA | '87 Mustang | LA 12/87 | A |
| Sandra Williams | LA | '86 Thunderbird | LA 06/86 | A |
| Charles Pagliughi | LA | '90 Ranger XLT | LA 09/90 | A |
| Gary Songy | LA | '87 Bronco II | LA 06/87 | A |
| Deborah Vallaire | LA | '85 LTD | LA 04/96 | A |
| Danny Rousell | LA | '91 Explorer | LA 11/90 | A |
| Allen Turner, Jr. | LA | '90 Cougar | LA 1991 | B |
| Patricia Taylor | LA | '90 Tempo | LA 05/90 | B |
| Nell Allen | LA | '88 Town Car | LA 09/93 | B |
| Paul Akers | LA | '89 Tempo | LA 10/89 | B |
| Mary Harris | LA | '89 Grand Marquis | LA 05/89 | B |
| Emile Hall, Jr. | LA | '91 Thunderbird | LA 07/91 | B |
| Gwen Hecard | LA | '89 Town Car | LA 09/92 | B |
| Arnold Husband | LA | '84 CRV | LA 03/95 | A |
| Kavin Robinson | LA | '89 Town Car | LA 06/95 | B |
| Dolores McCoy | LA | '89 F 150 | LA 08/89 | B |
| James Millet | LA | '89 F 150 | LA 02/95 | B |